UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:12-CR-01-KKC-HAI-5 |
| v. | ) | |
| | ) | RECOMMENDED DISPOSITION |
| CHRISTI N. COMBS, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

On referral from District Judge Caldwell (D.E. 509), the Court considers reported violations of supervised release conditions by Defendant Christi N. Combs.

Then-District-Judge Thapar entered judgment against Defendant in September 2012 after a jury found Defendant guilty of conspiracy to distribute (and possession with intent to distribute) oxycodone pills.  D.E. 194 (trial minutes); D.E. 248 (judgment).  Defendant was sentenced to 72 months of imprisonment followed by ten years of supervised release.  Judge Thapar later granted Defendant's motion for a sentence reduction and resentenced her to sixty months under Amendment 782.  D.E. 387.  Defendant was released on August 12, 2016, to begin her ten-year supervision term.

## I.

On January 29, 2024, the United States Probation Office ("USPO") issued the Supervised Release Violation Report ("the Report") that initiated these proceedings.  The Report charges three violations.  The Report says:

> On January 24, 2024, Combs was arrested by the Somerset Police Department in Somerset, Kentucky.  According to the arrest citation, Officers were dispatched to Walmart regarding a shoplifting complaint.  Upon arrival,

officers made contact with loss prevention that advised Combs had taken several clothing items and concealed them in her purse inside of her shopping cart.  She then proceeded to the front and checked out paying for several items inside her cart but not the items concealed in her purse.  She then proceeded to leave the store passing all points of sale without rendering payments for the items in her purse.

The total for the concealed merchandise was $35.92.  Combs was placed into custody and transported to the Pulaski County Detention Center at which time the Officer advised Combs of the charge for promoting contraband and asked her if she had anything illegal hidden on her person.  Combs advised she had something concealed inside her bra, at which time a female detention officer was called to assist in retrieving the items.  A small plastic bag containing a crystal-like substance, a bag containing an unknown substance, and drug paraphernalia were located on her person.  The substances were sent to Kentucky State Police laboratory for identification.

Based on this arrest, Violation #1 alleges a violation of the condition that prohibits committing another federal, state, or local crime.  According to the Report, Defendant was charged with "Theft by Unlawful Taking or Disposition (Shoplifting)," a Class B misdemeanor (punishable by up to 90 days in jail and a fine up to $250) under Ky. Rev. Stat. § 514.030.  This is a Grade C violation.

Based on the suspected methamphetamine found on Defendant while she was being booked, Violation #2 charges a violation of the condition that prohibits unlawful possession of a controlled substance.  Violation #2 is a Grade B violation because Defendant's possession of methamphetamine, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).  Alternatively, simple possession of methamphetamine violates K.R.S. § 218A.1415(1)(c), which is a Class D Felony.

Violation #3 alleges a Grade C violation of the condition that requires Defendant to "notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer."  According to the Report,

2

The defendant failed to contact the probation officer within 72 hours of her arrest on January 24, 2024.  On January 25, 2024, this officer attempted to reach Combs by phone on her reported number several times, including leaving a voicemail, as well as sending a text, to return my call.  Combs did not respond to this officer's attempts to reach her.

On February 2, 2024, the USPO issued an Addendum (the "First Addendum") to the Report.  The First Addendum includes two additional violations.  The first is labeled as Violation #3.  But, because there is already a Violation #3, the Court refers to this Violation as #3A.  Violation #3A alleges a violation of the condition that requires Defendant to "notify the probation officer at least ten days prior to any change in residence or employment."  The Report says that U.S. Marshals attempted to serve Defendant's release-violation warrant at her last reported address.  The officers were told by a female resident that Combs did not live there.  In fact, the current resident told the Marshals that she, not Defendant, had lived there since March 2023.  This is a Grade C violation.

Violation #4 in the First Addendum alleges a Grade C violation of the condition that requires Defendant to "answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer."  The First Addendum says that Defendant's monthly reports, including the report submitted in January 2024, listed her address as the same Somerset apartment described in Violation #3A.  However, Defendant had not been living there since March 2023.

On February 6, 2024, the USPO issued a Second Addendum, which includes two more violation allegations.  According to the Second Addendum,

On February 6, 2024, Combs reported to the Lexington U.S. Probation office as instructed to self-surrender on the outstanding Supervised Release Violation warrant.  Combs provided a urinalysis that yielded positive results for methamphetamine, benzodiazepines, and MDMA.  Combs signed an admission

form for the use of methamphetamine and Xanax, most recently on February 2, 2024.  The sample was submitted to Alere Toxicology for further analysis[.]

Based on this admitted use of meth and Xanax, Violation #5 charges a Grade C violation of the condition that prohibits unlawful use and possession of a controlled substance.

Replying on Defendant's admitted methamphetamine use, Violation #6 charges a violation of the condition that prohibits committing another federal, state, or local crime.  Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of methamphetamine, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

The Court conducted an initial appearance under Rule 32.1 on February 8, 2024.  D.E. 510.  The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing.  At the initial appearance, the United States made an oral motion for interim detention.  Defendant did not argue for release.  *Id*.  Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

Court reconvened on March 4, 2024.  D.E. 516.  Rather than holding a final hearing, the Court released Defendant to Liberty Place for Women for inpatient substance-abuse treatment.  The probation officer instructed her to complete the program as a required condition of supervision.  Defendant was set to return to Court on November 14, 2024, for a status hearing.  *Id*.  Defendant arrived at Liberty Place the same day of the hearing and Defendant's release.

On July 23, 2024, the USPO issued a Third Addendum to the Report.  It charges two more violations.  Violation #7 charges a Grade C violation of the condition that requires

4

participation in substance-abuse treatment as directed by the probation officer.  According to the Third Addendum,

> From Combs' arrival at treatment, through her ultimately being discharged, the undersigned conducted several checks with the treatment provider to verify Combs remained in compliance.  Most of the reports from the treatment providers expressed that Combs was doing well overall, however, had committed rule violations on a few different occasions.  On July 22, 2024, the undersigned received a call from the director of The Liberty Place indicating that Combs had been found by staff in possession of an unauthorized cell phone on Saturday, July 20, 2024.  Director Alisha notified the undersigned that she was going to give Combs the ultimatum that she could either restart the program from the beginning or be discharged for non-compliance.  Following Combs' notification by staff at The Liberty Place of her ultimatum, Combs called the undersigned.  She advised that she was unwilling to restart the program at The Liberty Place and would rather go to another treatment facility and start from the beginning or go to jail. The undersigned contacted the Madison County Sheriff's Department to serve the outstanding warrant referenced in Violation Number Eight as Combs was going to be released from treatment at The Liberty Place due to her unwillingness to start treatment from the beginning.  Combs was taken into custody on her outstanding warrant and was ultimately discharged from The Liberty Place Treatment Facility. Combs failed to complete substance abuse treatment as directed by her probation officer.

Finally, Violation #8 charges another violation of the condition that prohibits commission of another federal, state, or local crime.  This violation refers back to the shoplifting arrest described in Violation #1, after which Defendant was found in possession of suspected controlled substances and paraphernalia.  According to the Third Addendum, following lab results, Defendant was indicted in Pulaski County Circuit Court case number 24-CR-00201 for Possession of a Controlled Substance, First Degree, First Offense (Methamphetamine), Possession of a Controlled Substance First Degree (Fentanyl), and Possession of Drug Paraphernalia.  This is a Grade B violation because first-degree drug possession is a Class D felony under Ky. Rev. Stat. § 218A.1415(1)(c).

On September 5, 2024, the Court conducted an initial appearance on the Third Addendum. D.E. 521. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral motion for interim detention. Defendant did not argue for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on September 16, 2024, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 522. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all nine violations. *Id*. The Court reviewed all nine violation allegations, and she admitted her guilt on each. For purposes of Rule 32.1 proceedings, the government established Violations # 1, 2, 3, 3A, 4, 5, 6, 7, and 8 under the standard of section 3583(e).

## II.

The Court has evaluated the entire record, the Report, the three Addenda and accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant was convicted of a Class C drug-trafficking conspiracy. *See* 21 U.S.C. §§ 841, 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original

sentencing) and the "grade" of the violation proven.  *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007).  Under section 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1, 3, 3A, 4, 5, and 7 and Grade B violations for Violations #2, 6, and 8.  Given Defendant's criminal history category of I (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is four to ten months.  USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation.  *See* 18 U.S.C. § 3583(b) & (h).  Defendant's drug trafficking conviction carries no maximum term of supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

### III.

At the final hearing, the parties jointly recommended revocation with six months of imprisonment and no further supervised release to follow.

Concerning the termination of supervision, the government argued that there is no danger of Defendant returning to the underlying criminal conduct.  Defendant had been traveling to Florida to obtain oxycodone pills for other people to sell.  While this type of trafficking used to be common in this District, it is no longer happening here.  Now, when "oxy" pills are found, they are usually counterfeits containing fentanyl.  Defendant was a "true zero" at sentencing, meaning she had no criminal history whatsoever aside from the behavior underlying this conviction.  The government thus concluded there is no risk of recidivism in the sense of Defendant returning to the same conduct underlying the conviction.

---

[1] *See* USSG § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

7

Additionally, while Defendant was not categorized as having a "minor role" under the Guidelines, she was not a leader or organizer of the oxy conspiracy. She was simply a "cog" in the machine bringing prescription pills from elsewhere to be sold here.

Accordingly, while Defendant recently operated "in the throes of drug use," the government argued she does not pose much danger to the community. This is evident from the fact she complied with supervision for six years. Defendant was "compliant for a long time, then meth reared its ugly head, and everything was downhill from there." The violation conduct exemplifies the erratic and irresponsible behaviors that go hand-in-hand with meth use.

In other words, the danger Defendant poses is her own use of meth and fentanyl. This danger level, in the government's view, is insufficient to justify continued supervision. Also, Defendant completed RDAP in prison, obtained drug treatment upon release, and recently received inpatient treatment at Liberty Place. These efforts to address Defendant's drug use "didn't take." The government concluded this means there is not enough need for treatment to justify continued supervision on that ground.

Concerning the jointly recommended revocation sentence, the government argued this within-Guidelines sentence addressed Defendant's breach of trust (which includes the leniency shown her earlier this year), counterbalanced against her long period of compliance. Here, there were nine violations, but they all flow from Defendant's return to drug use.

The defense agreed with the government's presentation, but filled in additional details. The defense argued that Defendant's stress to provide for her family put her at a higher risk of self-medicating. The staff at Liberty Place loved her, and she was making progress there. Defendant was there for four and a half months. According to the defense, the issue with Liberty Place was its rules were so strict (concerning things like use of tobacco and phones) that

Defendant balked at some of them.  Finally, the defense pointed out that, under Defendant's conditions, she could have petitioned the Court for early termination after five years on supervision.  *See* D.E. 248 at 3.  Unfortunately, this did not occur.

Defendant addressed the Court and reviewed her story following her release in 2016. Following her time in a halfway house, she obtained a job and worked hard for her kids.  She had the tools at the time to stay sober.  But things changed in 2020.  After Covid hit, she lost her job, became pregnant, and her best friend died from a fentanyl overdose.  In 2021, Defendant's father passed away in federal prison.  Yet she still stayed sober, even after losing so much.  She then lost her apartment and fell off the wagon.

Defendant said that getting arrested saved her life.  Her January arrest was a crucial wake-up call.  She has now been sober for eight months.  She is very grateful to her probation officer and Liberty Place.  At Liberty Place, she learned to take accountability for her own behavior and made peace with who she is.  She is stronger now.  Defendant said that, once she is released again, she hopes to go straight back into treatment.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature.  By statute, the Court must revoke Defendant because she possessed a controlled substance.  *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance.  Subsection 3583(d) provides an alternative to revocation and

9

imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for drug treatment as an alternative to revocation.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). As mentioned, Defendant assisted a drug trafficking conspiracy by bringing prescription oxycodone pills from Florida into Kentucky. The PSR indicates she had an oxycodone addiction at the time. Now, there is no hint of any return to trafficking. But Defendant remains haunted by addiction.

The Court next considers Defendant's history and characteristics. Defendant has no real criminal history. There are unfortunate events in her past and she developed a drug abuse habit. She completed RDAP in jail. Upon release, she received further drug treatment and performed well under supervision for six years. She could have petitioned to terminate supervision after five years, but that opportunity was not seized. The string of violation conduct here was provoked by methamphetamine use following a series of life challenges. Defendant now says that, after her most recent inpatient treatment, she has made peace with herself and is taking responsibility going forward.

Another factor concerns the need to deter criminal conduct and protect the public. Defendant's drug use poses a danger to herself, but she does not otherwise pose much of a risk of criminal behavior or danger to the public.

10

Another factor focuses on opportunities for education and treatment. Defendant has received drug-addiction treatments and she has stated an intention to seek more in the future. She has already been given opportunities for treatment on supervision. Additional supervision for the purpose of providing treatment is not an exemplary use of government resources.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). The trust breach here is significant because Defendant was shown leniency earlier this year when she was sent to inpatient treatment rather than being revoked. She also has been charged with a series of nine violations. Yet, she performed well on supervision for years and gives the Court hope that she can correct course.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed, as here, by imposing a within-Guidelines sentence.

The Court finds the jointly recommended penalty of six months months' incarceration is sufficient, but not greater than necessary, to address these factors. And the Court recommends adopting the parties' recommendation of no further supervision.

Based on the foregoing, the Court **RECOMMENDS**:

1.  That, upon her stipulation, Defendant be found guilty of all nine charged violations.

11

2.      Revocation with a term of imprisonment of six months, with no additional supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i).  As defined by § 636(b)(1), within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court.  Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Caldwell's docket upon submission.  If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 18th day of September, 2024.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**

12